UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JAMES B. JACKSON, | } |
| Plaintiff, | } |
| v. | } Case No.: 2:25-cv-00630-RDP |
| CITY OF BIRMINGHAM, ALABAMA et al., | } |
| Defendants. | } |

## MEMORANDUM OPINION

Before the court is Defendant Michael Pickett's Motion to Dismiss Plaintiff's Amended Complaint. (Doc. # 27). The Motion has been fully briefed. (Docs. # 27, 28, 29). After careful review, and for the reasons discussed below, the Motion is due to be granted in part and denied in part.

**I.      Factual Background[1]**

Plaintiff James B. Jackson has been employed by the City of Birmingham's police force for 32 years. (Doc. # 24 at ¶ 5). He has served as a captain in the force for eight years and "is the senior of the 12 persons" who hold that rank. (*Id.*). As a captain, Plaintiff typically works the day shift, meaning that is his "normal" shift. (*Id.* at ¶ 6, 8). Captains are typically "never required to work shifts other than the normal day shift," other than when assigned an "on call" rotation "for a week at a time each year." (*Id.* at ¶ 10).

---

[1] The court summarizes Plaintiff's well-pleaded factual allegations and assumes their veracity to "determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Candield, Paddock & Stone, PLC*, 413 Fed. App'x 136, 138 (11th Cir. 2011). For purposes of ruling on the motion to dismiss, the court views the complaint's allegations and any reasonable inferences in the light most favorable to the plaintiff. *See Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1234 (11th Cir. 2010).

Defendant Michael Pickett is Birmingham's Chief of Police. (*Id.* at ¶¶ 3, 12). In that position, Defendant Pickett directs the conditions of Plaintiff's employment. (*Id.* at ¶ 12). Since October 2024, "Plaintiff has sought and been approved for intermittent leave" under the FMLA to care for his mother. (*Id.* at ¶ 7).

Defendant Birmingham's Personnel Board promulgates Rules and Regulations that govern its operations. (*Id.* at ¶ 58). The Rules and Regulations establish various levels of employment. (*Id.*). The position of Police Captain is Class No. 06035, Grade 31 (*id.* at ¶ 59), while the position of Police Lieutenant is Class No. 06034, Grade 26 (*id.*). The Rules and Regulations also describe the duty requirements and job responsibilities for the positions: "Captains have the role of overseeing departments of the police force[,] whereas Lieutenants are over precincts and on the scene during all shifts." (*Id.* at ¶ 60). Finally, the Rules and Regulations provide that, in shift assignments, "officers will have their choice by seniority, so long as the interest of the Department is kept foremost." (*Id.* at ¶ 53).

On January 25, 2025, Defendant Pickett "assigned Plaintiff to start working the night shift" (*id.* at ¶ 14) in the position of "Utility Captain" (*id.* at ¶ 66). Plaintiff was the only captain ordered to work the night shift. (*Id.* at ¶ 15). After he was assigned to the night shift, Plaintiff asked to meet "with his immediate supervisor, Deputy Chief Pruitt" and Defendant Pickett "to contest the proposed transfer to the night shift." (*Id.* at ¶ 16).

Defendant Pickett met with Plaintiff. (*Id.* at ¶ 18). At the meeting, Plaintiff was told that his assignment was to perform the work normally done by lieutenants, including "covering all four police precincts," "driving to crime and accident scenes," and "showing his white shirt." (*Id.*). Plaintiff pointed out "his ongoing FMLA status," the "extreme hardship" that moving to the night

2

shift would cause, and his "seniority status"; however, Defendant Pickett "would not change his order" moving Plaintiff to the night shift. (*Id.* at ¶ 19).

On January 27, 2025, "Plaintiff filed a grievance with the Personnel Board of Jefferson County" challenging his transfer to the night shift as violating "the seniority Rules and Regulations of the Police Department." (*Id.* at ¶ 27). Defendant Birmingham responded to the grievance on March 5, 2025. (*Id.* at ¶ 28). An administrative hearing was conducted on September 9, 2025. (*Id.* at ¶ 29). A decision from the Personnel Board will not come until mid-December 2025, but the Personnel Board "informed the parties that FMLA matters were not to be considered by that agency but were for [Defendant City of] Birmingham to handle." (*Id.* at ¶ 30).

"[T]o avoid disciplinary action or termination," Plaintiff exhausted "his substantial amount of present and accrued sick leave" working on the night shift. (*Id.* at ¶ 21). When Plaintiff used his vacation time, "no [c]aptain was assigned to work nights for at least six weeks." (*Id.* at ¶ 24). Plaintiff also alleges the transfer has required him to "hire caregivers for his mother at night." (*Id.* at 14). Plaintiff claims that his move to the night shift was an attempt "to coerce him to retire." (*Id.* at ¶ 38).

Other captains assigned to the night shift have had those assignments reversed. Captain F.A. objected to his transfer based on "personal hardship" because his wife travels for work. (*Id.* at ¶ 45). Captains J.R. and C.M. objected based on seniority and working out of classification. (*Id.* at ¶ 46). Captain T.B, a newly-appointed captain, was assigned to night shift, but Plaintiff believes he was moved to a day position due to medical hardship for a relative. (*Id.* at ¶ 47). Each of these adjustments and reversals were made while and after Plaintiff was moved to the night shift. (*Id.* at ¶ 48).

3

On April 11, 2025, Plaintiff was questioned "about whether he had properly filed his requests for FMLA leave and properly reported himself off from work." Plaintiff claims that the questioning was a "retaliatory action" that "could result in disciplinary action against him." (*Id.* at ¶ 51).

Plaintiff argues that his assignment to night duty requires him to work as a lieutenant and therefore "working outside of classification" in violation of the Personnel Board's regulations. (*Id.* at ¶ 43). Further, Plaintiff claims Defendant Pickett has a "personal vendetta" against him and that there is "no rational basis for Plaintiff to be the primary target of night duty as opposed to any of the less senior . . . [c]aptains." (*Id.* at ¶ 54-56).

## II.    Procedural Background

On April 25, 2025, Plaintiff filed this action against Defendant Birmingham and Defendant Pickett, individually and in his capacity as Chief of Police for Defendant Birmingham. (Doc. # 1). On September 16, 2025, Plaintiff filed his Amended Complaint asserting five causes of action: (1) Interference with Plaintiff's FMLA Rights Under 29 U.S.C. § 2615(a) by Defendant City of Birmingham; (2) Retaliation Against Plaintiff In Violation of 29 U.S.C. § 2615(a) by Defendant City of Birmingham; (3) Interference With Plaintiff's FMLA Rights Under 29 U.S.C. § 2615(a) by Defendant Pickett In His Official Capacity; (4) Retaliation Against Plaintiff In Violation of 29 U.S.C. § 2615(a) by Defendant Pickett In His Official Capacity; and (5) the Tort of Outrage for the Intentional Infliction of Emotional Harm by Defendant Pickett ("outrage/IIED"). (Doc. # 24). On September 30, 2025, Defendant Pickett filed the instant motion to dismiss Plaintiff's Amended Complaint. (Doc. # 27).

### III.  Standard of Review

Defendant moves to dismiss Plaintiff's Amended Complaint under Rules 12(b)(1) and 12(b)(6). (Doc. # 27 at 1). The court summarizes the applicable law for each rule below.

#### A.  12(b)(1) Motion to Dismiss

Challenges to subject matter jurisdiction under Rule 12(b)(1) can exist in two different forms: facial attacks and factual attacks. *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009), *abrogated on other grounds*, *Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012). When presented with a facial attack on a plaintiff's complaint, a court determines whether the complaint has sufficiently alleged subject-matter jurisdiction. *Sinaltrainal*, 578 F.3d at 1260. The court proceeds as if it were evaluating a Rule 12(b)(6) motion, views the complaint in the light most favorable to the plaintiff, and accepts any well-pled facts alleged in the complaint as true. *Id*. Factual attacks, on the other hand, question "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id*. (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). When a court is confronted with a factual attack, the standard of review is different.

> [T]he trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction – its very power to hear the case – there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to [P]laintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Lawrence*, 919 F.2d at 1529 (citing *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir.), *cert. denied*, 454 U.S. 897 (1981)).

#### B.  12(b)(6) Motion to Dismiss

The Federal Rules of Civil Procedure require only that the complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

5

However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Twombly*, 550 U.S. at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id*. A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Candield, Paddock & Stone, PLC*, 413 Fed. App'x 136, 138 (11th Cir. 2011) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense...to infer more than the mere possibility of misconduct." *Twombly*, 550 U.S. at 556. Further, "courts may infer from the factual allegations

6

in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental*, 605 F.3d at 1290 (quoting *Iqbal*, 556 U.S. at 682). If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 556.

## IV.     Discussion

Defendant Pickett argues that (1) Plaintiff's individual capacity claims lack subject matter jurisdiction, (2) Defendant Pickett has qualified immunity as to Plaintiff's official capacity claims, (3) Plaintiff has failed to plead a plausible FMLA interference claim against Defendant Pickett, and (4) Plaintiff has failed to plead an outrage/IIED claim against Defendant Pickett. (*See generally* Docs. # 27, 29). The court addresses each of Defendant Pickett's arguments in turn.

### A.     The court has subject matter jurisdiction over Plaintiff's individual capacity claim against Defendant Pickett.

Counts 1 and 2 of Plaintiff's Amended Complaint are brought solely against Defendant City of Birmingham, and Counts 3 and 4 are brought against Defendant Pickett "in his official capacity." (Doc. # 24 at 10-20). Thus, the only claim brought against Defendant Pickett in his individual capacity is the Alabama state law tort of outrage/IIED contained in Count 5. (*Id.* at 17-18).

"[D]istrict courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367. "The constitutional 'case or controversy' standard confers supplemental jurisdiction over all state claims which arise out of a common nucleus of operative fact with a substantial federal claim." *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 743 (11th Cir. 2006) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966); *Palmer v. Hosp. Auth. of Randolph Cnty.*, 22 F.3d 1559,

7

1563-64 (11th Cir. 1994) (a federal court has the power under section 1367(a) to exercise pendent jurisdiction over state claims which arise from the same occurrence and involve the same or similar evidence); *L.A. Draper & Son v. Wheelabrator–Frye, Inc.*, 735 F.2d 414, 427 (11th Cir. 1984) (a federal court may exercise pendent jurisdiction over state law claims deriving from a common nucleus of operative fact with a substantial federal claim)).

Plaintiff brings the tort of outrage/IIED based on Defendant Pickett's actions that also form the basis of Plaintiff's FMLA claims. (*See generally* Doc. # 24). Because this court has subject matter jurisdiction over Plaintiff's FMLA claims, and Plaintiff's outrage/IIED claim shares a "common nucleus of operative fact" and thus "form[s] part of the same case or controversy" as Plaintiff's FMLA claims, the court may exercise supplemental jurisdiction over Plaintiff's outrage/IIED claim. 28 U.S.C. § 1367; *Parker*, 468 F.3d at 743.

### B.   Defendant Pickett does not have qualified immunity as to Plaintiff's official capacity claims.

Because Plaintiff sought FMLA leave to care for his mother, Plaintiff's leave appears to fall under the family-care provision of the FMLA. 29 U.S.C. § 2612(a)(1)(C). Congress abrogated Eleventh Amendment immunity for claims brought under the family-care provision of the FMLA. *Nev. Dep't. of Hum. Res.s v. Hibbs*, 538 U.S. 721, 724-25 (2003). And Plaintiff's FMLA interference and retaliation claims are brought against Defendant Pickett "in his official capacity." (Doc. # 24 at 10-20).

Defendant Pickett's Motion asserts that he is entitled to qualified immunity from Plaintiff's FMLA claims in his official capacity as police chief. He is not. "Qualified immunity is only a viable defense for government officials who are sued in their *individual* capacities." *Ginwright v. Dep't of Revenue for Ala.*, No. 2:12-CV-473-WC, 2013 WL 1187943, at *5 (M.D. Ala. Mar. 21, 2013) (emphasis in original) (citing *Tapley v. Collins*, 211 F.3d 1210, 1214 (11th Cir. 2000)

("Under this common-law defense, public officials sued in their individual capacities are entitled to qualified immunity when their actions do not violate 'clearly established statutory or constitutional rights.'" (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982))); *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991) ("This is an official-capacities-lawsuit; thus, we hold that a qualified immunity defense is not available in this lawsuit."); *Lundgren v. McDaniel*, 814 F.2d 600, 604 (11th Cir. 1987) ("Qualified immunity – the objective 'good faith' defense – is available only in a personal capacity lawsuit, not in an official capacity action." (citing *Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985))). Because he was sued in his official capacity, Defendant Pickett is not entitled to qualified immunity as to Plaintiff's FMLA claims.

### C. Plaintiff failed to plead a plausible FMLA interference claim against Defendant Pickett.

The FMLA allows "employees to take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition." 29 U.S.C. § 2601(b)(2). That statute prohibits an employer from: (1) "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right provided under [the FMLA]" (the interference clause), and (2) "discharg[ing] . . . any individual for opposing any practice made unlawful by [the FMLA]" (the retaliation clause). 29 U.S.C. § 2615(a). So, there are "two types of claims for alleged violations of these provisions: interference claims, in which employers burden or outright deny substantive statutory rights to which their employees are entitled, and retaliation claims, in which employers discharge employees for exercising their FMLA right to leave." *O'Connor v. PCA Fam. Health Plan, Inc.*, 200 F.3d 1349, 1352 (11th Cir. 2000) (cleaned up).

"An FMLA interference claim lies if an employee can demonstrate . . . that [he] was entitled to an FMLA benefit and [his] employer denied [him] that benefit." *Munoz v. Selig Enters., Inc.*,

981 F.3d 1265, 1274 (11th Cir. 2020). An employee need not "allege that his employer intended to deny the right; the employer's motives are irrelevant." *Strickland v. Water Works & Sewer Bd. of Birmingham*, 239 F.3d 1199, 1208 (11th Cir. 2001). A plaintiff must also show that he has been prejudiced by the FMLA violation in some way, typically "demonstrating some harm remediable by either damages or equitable relief." *Evans v. Books-A-Million*, 762 F.3d 1288, 1296 (11th Cir. 2014) (citing *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002)); *see* 29 U.S.C. § 2617(a)(1).

"[U]nlawful employer interference includes not only refusing to authorize FMLA leave, but also discouraging an employee from using such leave." *Diamond v. Hospice of Fla. Keys, Inc.*, 677 F. App'x 586, 592 (11th Cir. 2017) (quoting 29 C.F.R. § 825.220(b)). In *Diamond*, the plaintiff began taking intermittent FMLA leave to care for her elderly parents, and her employer repeatedly discouraged her from taking leave through emails and other negative comments. Her employer also began requesting "proof of need" for her FMLA leave via documents that had no necessary relation to the plaintiff's need for leave such as gas, travel, and food receipts in the city where her parents reside. As a result of that discouragement, the plaintiff decided not to take some of the leave she was approved for, and she was eventually terminated for poor performance. The trial court entered summary judgment for the defendant employer, but the Eleventh Circuit vacated that ruling and found that there was sufficient evidence for a reasonable jury to find that the employer interfered with the plaintiff's FMLA rights. *Id.* at 594.

Here, Plaintiff alleges that he was granted FMLA leave to care for his mother (Doc. # 24 at ¶ 7), so he has not been denied an FMLA benefit. Rather, Plaintiff alleges that Defendant Pickett transferred him to the night shift which has caused him (1) to "lose vacation and sick leave time," and (2) "hire caregivers for his mother at night." (*Id.* at 14). Plaintiff was also questioned whether

10

he had properly filed his requests for FMLA leave and properly reported himself off from work. (*Id*. at ¶ 50). Plaintiff claims that Defendant Pickett interfered with his FMLA rights by transferring him to the night shift in violation of the Personnel Board's Rules and Regulations and in an attempt to force him to retire or resign by imposing "onerous" conditions of employment. (*Id.* at 14-15).

The court recognizes that Plaintiff's transfer to the night shift has created hardships he would not have faced under his prior schedule. But, none of Plaintiff's well-pleaded allegations indicate that Defendant Pickett discouraged Plaintiff from using his leave or that Plaintiff did not take leave that he otherwise would have taken. 29 C.F.R. § 825.220(b). Accordingly, Plaintiff's FMLA interference claim against Defendant Pickett is due to be dismissed.

### D.  Plaintiff failed to plead a plausible outrage/IIED claim against Defendant Pickett.

Alabama law recognizes the tort of outrage. *Am. Rd. Serv. Co. v. Inmon*, 394 So.2d 361, 365 (Ala. 1980). Such a claim is narrowly confined. To state a claim of outrage in Alabama, "a plaintiff must demonstrate that the defendant's conduct (1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it." *Little v. Robinson*, 72 So. 3d 1168, 1172 (Ala. 2011). "The initial determination as to whether evidence is sufficiently extreme or outrageous to support a cause of action for outrageous conduct is for the trial court to make as a matter of law." *Carter v. Harris*, 64 F. Supp. 2d 1182, 1194 (M.D. Ala. 1999) (citing *McElroy v. TNS Mills, Inc.*, 953 F. Supp. 1383 (M.D. Ala. 1996)).  In other words, to advance a claim of outrage, a plaintiff's burden is a "heavy" one. *Stancombe v. New Process Steel LP*, 652 Fed. App'x 729, 739 (11th Cir. 2016) (quoting *Surrency v. Harbison*, 949 So. 2d 1097, 1105 (Ala. 1986)).

To be sure, the Supreme Court of Alabama has previously stated that the tort of outrage is an "extremely limited cause of action" that has been recognized in regard to only three kinds of

conduct: (1) wrongful conduct in the family-burial context; (2) barbaric methods employed to coerce an insurance settlement; and (3) egregious sexual harassment. *Potts v. Hayes*, 771 So. 2d 462, 465 (Ala. 2000) (internal citations omitted). However, the Court has since clarified that these three circumstances are not exhaustive:

> That is not to say, however, that the tort of outrage is viable in only the three circumstances noted in *Potts*. Recently, this Court affirmed a judgment on a tort-of-outrage claim asserted against a family physician who, when asked by a teenage boy's mother to counsel the boy concerning his stress over his parents' divorce, instead began exchanging addictive prescription drugs for homosexual sex for a number of years, resulting in the boy's drug addiction. *See O'Rear v. B.H.*, 69 So. 3d 106 (Ala. 2011). It is clear, however, that the tort of outrage is viable only when the conduct is "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Horne v. TGM Assocs., L.P.*, 56 So. 3d 615, 631 (Ala. 2010) [internal citations omitted].

*Little*, 72 So. 3d at 1172-73 (emphasis added). Further, Alabama courts have recognized the viability of outrage claims in the employment context in appropriate circumstances. *Rice v. United Ins. Co. of Am.*, 465 So. 2d 1100 (Ala. 1984). Therefore, the relevant inquiry here is not whether Defendant's conduct fits squarely within the confines of one of those three previously established categories, but instead whether Plaintiff has alleged "conduct so extreme in degree as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in civilized society." *Avendano v. Shaw*, 371 So. 3d 278, 286 (Ala. 2022) (quoting *Wilson v. Univ. of Ala. Health Servs. Found., P.C.*, 266 So. 3d 674, 677 (Ala. 2017)); *Abengowe v. MCM Servs., Inc.*, 2016 WL 1613052, at *3 (N.D. Ala. 2016).

Defendant Pickett contends that Plaintiff has not stated a plausible outrage claim because the alleged conduct does not fall within any of the three categories in which Alabama recognizes the tort. (Doc. # 27 at 7). Plaintiff argues that Defendant Pickett's conduct in moving him to the night shift despite Defendant's knowledge of the effects on Plaintiff's mental health gives rise to the tort of outrage. (Doc. # 28 at 8). The court agrees with Defendant Pickett.

12

First, Plaintiff has not presented, and the court has not found, any Alabama case where an employee was allowed to proceed on an outrage claim where the outrageous conduct did not result in the employee's termination. *See, e.g.*, *Rice*, 465 So. 2d at 1102 (trial court erred in dismissing outrage claim where pregnant employee claimed employer discriminated because of her pregnancy by engaging in a pattern of conduct over a period of several months aimed at forcing her to leave her job, thereby violating plaintiff's federally protected right to be free from discrimination based on sex); *Wyatt v. BellSouth, Inc.*, 998 F.Supp. 1303, 1312 (M.D. Ala.1998) (finding that "the discharge of an employee rises to the level of the tort of outrage only if the discharge violates public policy").

Next, although Plaintiff does allege that he was wrongfully transferred to the night shift, noticeably absent from the Complaint are any allegations about an "onslaught of harassment," "a slew of adverse repercussions," or other circumstance approximating "extreme and outrageous" conduct accompanied the transfer. *Lees v. Sea Breeze Health Care Ctr., Inc.*, 391 F. Supp. 2d 1103, 1108 (S.D. Ala. 2005). "If the tort of outrage were recognized under the circumstances alleged in this case, it would mean that the tort of outrage would exist in every case when an employer discriminates or retaliates against an employee – a result not consistent with the 'extremely limited' nature of the tort of outrage in Alabama." *Estate of Reed v. Ponder Enters., Inc.*, No. 1:11CV554–CSC, 2012 WL 1031487, at *8 (M.D.Ala. Mar. 27, 2012) (cleaned up) (citing *Little*, 72 So.3d at 1172).

Finally, although the Alabama Supreme Court has recognized that a viable claim *could* fall outside the three categories listed in *Potts*, both state and federal courts and a panel of the Eleventh Circuit have been reluctant to extend the tort to any other categories of conduct. *See Moore v. Lowe*, 591 F. Supp. 3d 1087, 1118 (N.D. Ala. 2022) (citing *Stancombe v. New Process Steel LP*,

13

652 Fed. App'x 729 (11th Cir. 2016) (unpublished); *McIsaac v. WZEW-FM Corp.*, 495 So. 2d 649, 651 (Ala. 1986)). In short, Defendant Pickett's alleged actions here are simply not comparable to the illustrative areas in which the limited tort of outrage has been recognized in Alabama. Thus, Plaintiff's outrage claim is due to be dismissed.

**V.     Conclusion**

For the reasons stated above, Defendant Michael Pickett's Motion to Dismiss Plaintiff's Amended Complaint (Doc. # 27) is due to be granted in part and denied in part, and Plaintiff's claims for FMLA interference and outrage/IIED against Defendant Pickett are due to be dismissed with prejudice. A separate order consistent with this memorandum opinion will be entered.

**DONE** and **ORDERED** this December 10, 2025.

_____
**R. DAVID PROCTOR**
CHIEF U.S. DISTRICT JUDGE